# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## STATESVILLE DIVISION
## CIVIL ACTION NO. 5:25-CV-00149-KDB

| | |
|---|---|
| SUSAN HAIRSTON, | |
| **Plaintiff,** | |
| v. | **MEMORANDUM AND ORDER** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| **Defendant.** | |

**THIS MATTER** is before the Court on Plaintiff Susan Hairston's appeal of an unfavorable administrative decision denying her Title II application for a period of disability and disability insurance benefits under the Social Security Act. *See* Doc. No. 1. Having reviewed and considered the parties' briefs, the administrative record, and the applicable authority, the Court finds the Defendant Commissioner's decision to deny Ms. Hairston Social Security benefits is supported by substantial evidence and uses the correct legal standards. Accordingly, the Commissioner's decision will be **AFFIRMED**.

## I. PROCEDURAL BACKGROUND

Ms. Hairston filed a claim for disability insurance benefits on September 15, 2022, with an amended alleged onset date of September 1, 2023, claiming that she is disabled because of a number of different impairments, including, but not limited to, obesity, fibromyalgia and carpal tunnel syndrome. (Doc. No. 4 (Administrative Record) ("AR") 167). Ms. Hairston's claim was denied initially and upon reconsideration (AR 246). An ALJ then denied Ms. Hairston's application for benefits in August 2024 (AR 164-180). The Appeals Council denied Ms. Hairston's

1

request for review (AR 1), and Ms. Hairston now timely seeks judicial review under 42 U.S.C. § 405(g).

## II. THE COMMISSIONER'S DECISION

The ALJ followed the required five-step sequential evaluation process ("SEP") established by the Social Security Administration ("SSA") to determine whether Ms. Hairston was disabled under the law during the relevant period.[1] At step one, the ALJ found that Ms. Hairston had not engaged in substantial gainful activity since the alleged onset date ("AOD") (20 C.F.R. § 416.971 et seq.) and at step two that she had the following severe impairments: morbid obesity; fibromyalgia; osteoarthritis; degenerative joint disease; degenerative disc disease; carpal tunnel syndrome; and bursitis. (20 CFR 404.1520(c)). AR 167. At step three, the ALJ found that none of Ms. Hairston's impairments, nor any combination thereof, met, or equaled one of the conditions in the Listing of Impairments at 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). AR 168.

Before proceeding to step four, the ALJ determined that Ms. Hairston had the following residual functional capacity ("RFC"):

> to perform sedentary work as defined in 20 CFR 404.1567(a) in that the claimant can lift and carry up to a maximum of 10 pounds, sit 6 hours in an 8-hour workday and stand and walk for up to 2 hours in an 8-hour workday. Additionally, the claimant requires the use of a handheld assistive device, a single prong cane, for ambulation; could occasionally use ramps and stairs; could occasionally balance,

---

[1] The five-step sequential evaluation required the ALJ to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(a)–(g) and 404.1520(a)–(g). The claimant has the burden of production and proof in the first four steps, but at step five, the Commissioner must prove the claimant can perform other work in the national economy despite her limitations. *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015).

2

stoop, kneel, and crouch; could frequently reach, handle, finger and feel bilaterally; and tolerate no exposure to workplace hazards, including unprotected heights or dangerous machinery; could frequently use hand controls and occasionally use foot controls; could tolerate no exposure to extreme levels of heat or cold temperatures.

AR 170. In discussing the RFC as it relates to Plaintiff's fibromyalgia, the ALJ explained:

the undersigned has considered the guidance provided in SSR 12-2p, which addresses fibromyalgia. **Notably, following the guidance of SSR 12-2p, and Arakas v. Comm'r of Soc. Sec., 983 F.3d 83 (4th Cr. 2020), the undersigned carefully reviewed the claimant's subjective complaints** that were generally supported by the record evidence, including the claimant's allegations, **and did not rely on the absence of objective exam findings or imaging to discount the claimant's otherwise supported impairment-related symptoms, such as fatigue and widespread pain.** Further, as required by SSR 16-3p, the undersigned has considered the claimant's subjective complaints, including pain, when considering the totality of the claimant's impairments and associated limitations. Taking the entire record into account, the undersigned finds that the greater weight of the evidence supports the various exertional and nonexertional limitations, including those restrictions allowing for a cane with ambulation, as they are otherwise set forth in the above residual functional capacity.

AR 179 (emphasis added).

Finally, at step four, the ALJ found that Ms. Hairston had past relevant work as a mail carrier and customer service clerk, and that she was capable of performing her work as a customer service clerk as it was actually performed. AR 179. That is, the work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565). *Id.* Thus, the ALJ found that Ms. Hairston was not disabled under the Social Security Act from September 1, 2023, through the date of his decision. AR 180.

### III. LEGAL STANDARD

The legal standard for this Court's review of social security benefit determinations is well established. *See Drumgold v. Comm'r of Soc. Sec.*, 144 F.4th 596, 604 (4th Cir. 2025); *Shinaberry v. Saul*, 952 F.3d 113, 120 (4th Cir. 2020). "The Social Security Administration (SSA) provides

benefits to individuals who cannot obtain work because of a physical or mental disability. To determine whether an applicant is entitled to benefits, the agency may hold an informal hearing examining (among other things) the kind and number of jobs available for someone with the applicant's disability and other characteristics. The agency's factual findings on that score are 'conclusive' in judicial review of the benefits decision so long as they are supported by 'substantial evidence.' " *Biestek v. Berryhill*, 587 U.S. 97, 98-99 (2019) (quoting 42 U.S.C. § 405(g)).

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations." *Id.* at 102 (citation modified). "[T]he threshold for such evidentiary sufficiency is not high. Substantial evidence ... is more than a mere scintilla.[2] It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 103 (citation modified). "This isn't a high threshold." *Drumgold*, 144 F.4th at 604. Accordingly, this Court does not review a final decision of the Commissioner *de novo, Hairston v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), and must affirm the Social Security Administration's disability determination "when [the] ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." *Drumgold*, 144 F.4th at 604; *see also Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) ("Where

---

[2] As the Fourth Circuit has noted, "[s]tandards are easy to recite, but harder to apply. Part of that difficulty . . . lies with confusing terminology like 'a scintilla of evidence.' After all, what in the world is a 'scintilla?' . . . [D]ating back to the nineteenth century, courts have struggled with the 'distinction between what is a scintilla' and what is not." *Boing v. Raleigh & G.R. Co.*, 87 N.C. 360 (N.C. 1882) (remarking that the distinction "is so narrow that it is often very difficult for a court to decide upon which side of the line evidence falls"). Recognizing this difficulty, current South Carolina Supreme Court Justice John C. Few once remarked, in jest, that "scintilla is Latin for 'whatever a judge wants it to mean.' . . . To overcome the vagaries inherent in the term 'scintilla,' courts should not only recite our well-settled standards . . . but also actively engage with the [relevant underlying evidence] in analyzing the arguments of the parties." *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756 (4th Cir. 2021).

4

conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ].").

Thus, this Court may not weigh the evidence again, nor substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. "In reviewing for substantial evidence" in support of an ALJ's factual findings, "[the reviewing court] do[es] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Rather, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the court defers to the ALJ's decision. *Id.*; *Shinaberry*, 952 F.3d at 123. This is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982). However, notwithstanding this limited standard of review of the Commissioner's factual determinations, the Court must always ensure that proper legal standards are being followed. *Long v. Kijakazi*, No. 1:22-CV-00091-KDB, 2022 WL 18026331, at *2–3 (W.D.N.C. Dec. 30, 2022).

## IV. DISCUSSION

In her appeal to this Court, Ms. Hairston raises a single complaint, arguing that the ALJ's decision must be vacated because he did not evaluate Plaintiff's fibromyalgia in accordance with Fourth Circuit precedent, specifically, *Arakas v. Comm., Soc. Sec. Admin.*, 983 F.3d 83 (4th Cir. 2020) and *Hultz v. Bisignano*, 162 F.4th 111 (4th Cir. 2025). While the Fourth Circuit has ruled with considerable concern for Social Security claimants diagnosed with fibromyalgia, it has not held that every fibromyalgia claimant is disabled. *See Hultz*, 162 F.4th at 126 ("to be sure, a fibromyalgia diagnosis does not create a presumptive entitlement to disability benefits."); *Sarchet*

*v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) ("Some people may have such a severe case of fibromyalgia as to be totally disabled from working, but most do not and the question is whether [the claimant] is one of the minority." (internal citations omitted)); Soc. Sec. Disability L. & Proc. in Fed. Ct. § 5:72 ("While fibromyalgia is often quite painful, the diagnosis of fibromyalgia alone does not ensure a finding of disability." (collecting cases)). Thus, although in this Circuit the circumstances where a claimant with a fibromyalgia diagnosis is not entitled to disability benefits may be few, there remains the possibility that an ALJ's decision that a fibromyalgia claimant is not disabled may be upheld. With due respect for both the ALJ's primary role in weighing the evidence and the governing authority, the Court finds this is such a case.

The legal principles governing Social Security disability claims based on fibromyalgia flow from the nature of the illness. Fibromyalgia is recognized as a chronic condition that causes widespread pain, but its specific cause is unknown, as is the mechanism by which it works. *See* American College of Rheumatology ("ACR"), https://rheumatology.org/patients/fibromyalgia (2026); Lina Noelia Jurado-Priego, et al., *Fibromyalgia: A Review of the Pathophysiological Mechanisms and Multidisciplinary Treatment Strategies*, Biomedicines Jul 11;12(7) (2024). There is no physical diagnostic tool or biomarker for the disease, so diagnosis relies on subjective descriptions of symptoms from the patient. *See Hultz*, 162 F.4th at 121. There is currently no cure or accepted course of treatment, although "medications, exercise and therapy can help." ACR, https://rheumatology.org/patients/fibromyalgia. In other words, proof that someone has fibromyalgia rests on an assessment of subjective evidence, and the absence of physical abnormalities or objective medical findings are irrelevant to a determination of the existence or severity of the condition. *Arakas*, 983 F.3d at 97. Accordingly, *Arakas* held that "ALJs may not rely on objective medical evidence (or the lack thereof)—even as just one of multiple factors—to

6

discount a claimant's subjective complaints regarding symptoms of fibromyalgia or some other disease that does not produce such evidence." *Id*.

A district court must uphold a Social Security disability determination if (1) the ALJ applied the correct legal standards and (2) substantial evidence supports the ALJ's factual findings. *See Id*. at 94. Therefore, the initial issue before the Court is whether the ALJ applied *Arakas* (and its more recent version *Hultz*) properly.

First, the ALJ specifically referenced *Arakas* and said that he had been careful not to consider the absence of supporting objective medical evidence in evaluating Ms. Hairston's fibromyalgia. AR 179. The Court finds this significant, but Plaintiff asks the Court to not credit the ALJ's statement, arguing that the ALJ "repeatedly cited to her normal or mild [physical exams] to discount her reports of high pain levels." Doc. No. 6 at 6, citing AR 172. The Court declines the invitation to ignore the ALJ's clear explanation of how he analyzed Plaintiff's fibromyalgia, which would also ignore the full context of the Plaintiff's claims.

Plaintiff raised multiple impairments as relevant to her disability claim, all of which she asserted were supported by objective medical evidence. The ALJ was not only permitted but bound to consider all the evidence offered by Plaintiff as to all of her impairments. *See Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017) ("An ALJ has the obligation to consider all relevant medical evidence …"). Thus, the fact that the ALJ considered some objective medical evidence – for example, in crafting a sedentary RFC to account for Plaintiff's knee pain – does not run afoul of *Arakas* or *Hultz*, when the ALJ did not consider that same information with respect to Plaintiff's fibromyalgia.

Second, the Court finds that the ALJ did not fail to follow *Arakas* or *Hultz* in critically evaluating her subjective claims of pain. Specifically, the ALJ was permitted to consider Ms.

7

Hairston's doctors' repeated comments that she did not appear to be in acute distress when she reported that her pain was 10 out of 10 (as she nearly always did, even when she was able to work full-time as a mail carrier). *See* AR 172-179. As noted above, in *Hultz*, the Court said that a diagnosis of fibromyalgia, which is solely dependent on subjective reports of pain, did not necessarily lead to a finding that a claimant is disabled. *See Hultz*, 162 F.4th at 126. For that holding to be meaningful, an ALJ must be allowed to review and assess the credibility of a claimant's subjective reports of pain, so long as the ALJ does not consider "objective medical exam findings" in doing so. In other words, unless a claimant's reports of pain can be challenged, then every diagnosis of fibromyalgia becomes a disability finding in practice, if not as a matter of law.

Here, the consistent subjective belief of Plaintiff's doctors that she did not appear to be in the acute distress of a person experiencing 10 out of 10 pain (based on her behavior during the examination) is evidence that an ALJ can fairly consider in evaluating how much to credit her reports of extreme pain. Unlike objective exam findings such as a limited range of motion or abnormal x-rays, which *Arakas* holds are irrelevant to the existence of fibromyalgia and its accompanying pain, an assessment of a patient's pain itself is not only relevant to the diagnosis, it is the sole factor that can be evaluated. Therefore, the ALJ did not err in considering Ms. Hairston's doctors' observations on the level of her pain in reaching his judgment as to the extent of her disability.

Having determined that the ALJ applied the correct legal standards, the Court must decide if substantial evidence supports the ALJ's factual findings. In brief summary, the ALJ found based on a careful review of the evidence that Ms. Hairston could perform sedentary work, including her former customer service employment. With respect to her fibromyalgia, the ALJ noted that

impairment had not prevented her – during the period for which she initially claimed disability – from doing work substantially in excess of her RFC and concluded she could work despite having fibromyalgia. Ms. Hairston in turn points to other parts of the treatment notes and her testimony that support her position. In other words, as in *Drumgold*, there was conflicting evidence that the ALJ resolved, and it is beyond the permissible role of this Court to reweigh the evidence, or substitute its judgment for the ALJ's. Further, the ALJ did not ignore Ms. Hairston's subjective complaints; rather, he considered them along with all the other evidence in developing her RFC (which contains numerous limitations). Accordingly, the denial of benefits is affirmed.

## V. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

Plaintiff's appeal (Doc. No. 1) is DENIED, and the Commissioner's decision is **AFFIRMED.**

**SO ORDERED ADJUDGED AND DECREED**.

Signed: April 28, 2026

Kenneth D. Bell
United States District Judge

9